IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


**HANS W. MUNICH**,

      Plaintiff,

v.

**COLUMBIA BASIN HELICOPTER, INC.,**

      Defendant.

Case No.  2:13-CV-00906-SU

ORDER ON MOTION FOR
SUMMARY JUDGMENT

SULLIVAN, United States Magistrate Judge:

Plaintiff Hans Munich, an Alaska resident, seeks to recover damages from Columbia Basin

Helicopter, Inc. ("CBH"), an Oregon company, on allegations of breach of contract, or alternatively

unjust enrichment.  Plaintiff also alleges fraud and intentional interference with contractual relations.

Defendant moves for summary judgment and plaintiff opposes the motion.  Both parties have

consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636.   For the following reasons, the

Court grants defendant's motion for summary judgment as to plaintiff's intentional interference with

contractual relations claim.   The Court denies summary judgment on the remaining breach of

contract, unjust enrichment, and fraud claims.


Page 1 - ORDER ON MOTION FOR SUMMARY JUDGMENT

## BACKGROUND

This case concerns the sale of a helicopter and the condition of the helicopter at the time of sale, specifically the helicopter's "airworthiness." Under the Federal Aviation Regulations ("FAR"), "No person may operate a civil aircraft unless it is in an airworthy condition." 14 C.F.R. § 91.7. An aircraft is "airworthy" when it complies with extensive federal safety mandates set forth in the FAR.[1] 14 C.F.R. § 3.5; *see e.g.* 14 C.F.R., Parts 21-49, 91, 125, 135. An aircraft must also comply with Airworthiness Directives ("ADs"), added requirements that Federal Aviation Administration ("FAA") issues periodically to supplement the FAR. *See* 14 C.F.R. §§ 39.3, 39.5, 39.7, 39.11, 39.13. In order to verify regulatory compliance, the FAR require aircraft-owners to maintain detailed and complete logbooks documenting inspections and work performed on the aircraft. *See, e.g.,* 14 C.F.R. §§ 91.407(a), 91.417, 91.419, 43.9, 43.11. Furthermore, an aircraft may not be operated unless the FAA has found it airworthy, and issued a certificate of airworthiness. 14 C.F.R. §§ 91.7, 21.183, 21.185. Once an aircraft owner obtains an airworthiness certificate, "it remains in full force and effect as long as the [aircraft] complies with" essential maintenance, safety, and record-keeping requirements in the FAR. *Old Republic Ins. Co. v. Griffin*, 402 F.3d 876, 877 (9th Cir. 2005); 14 C.F.R. § 21.181.[2] In the case of noncompliance, an airworthiness certificate is no longer effective. *Id.* If an aircraft is sold, the airworthiness certificate transfers to the new owner of the aircraft. 14

---

[1] "Airworthy means the aircraft conforms to its type design and is in a condition for safe operation." 14 C.F.R. § 3.5. The aircraft's functional ability to be airborne does not determine its "airworthiness."

[2] The FAR's 14 C.F.R § 21.181 provides: "Unless sooner surrendered, suspended, revoked, or a termination date is otherwise established by the FAA, airworthiness certificates are effective . . . as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 43 and 91 of this chapter and the aircraft are registered in the United States."

C.F.R. § 21.179.

In February 2012, plaintiff Munich contacted defendant CBH about purchasing one of its helicopters. David McCarty Decl., at 2 (Doc. #32); David McCarty Decl. Ex. 1, at 1-3 (Doc. #32-1). Plaintiff owns Yakutat Coastal Airlines, a company that provides scenic and recreational passenger flights in Alaska. Defendant, an eastern Oregon company, supplies helicopters and support personnel for agricultural, forest firefighting, and general utility lift purposes. Munich Decl. Ex. 2, at 1 (Doc. #39-2): David McCarty Decl., at 1; Def.'s Mot. Summ. J., at 3 (Doc. #30). Defendant's president, David McCarty, quoted plaintiff a price of $375,000 for a 1974 Hiller UH-12E Soloy helicopter. David McCarty Decl. Ex. 1, at 3.

Before signing a contract with defendant, plaintiff had a mechanic conduct a pre-purchase inspection of the helicopter. Munich Decl., at 3 (Doc. #39); David McCarty Decl., at 2-3. After signing the contract but before consummating the sale, plaintiff had another mechanic conduct an appraisal inspection for financing purposes. Munich Decl., at 3; David McCarty Decl., at 3-4. At both inspections, the recently refurbished helicopter was in "cosmetically excellent condition." Munich Decl., at 2. The helicopter's logbooks appeared to be in order and contained certifications that the helicopter was airworthy and in compliance with a recent annual inspection and all applicable ADs. Munich Decl., at 2-3. McCarty also represented to plaintiff that the helicopter was authorized to fly charter and commuter passenger flights pursuant to 14 C.F.R., Part 135 ("Part 135"), which sets forth stringent additional requirements beyond general airworthiness standards. Munich Decl., at 2; Smith Decl. Ex. 4 (Doc. #38-4) (Part 135 certification); *see* 14 C.F.R. §§ 135.1-135.43. However, plaintiff alleges that defendant failed to provide the two mechanics with all of the

helicopter's logbooks including the engine logbooks.[3]  Munich Decl., at 3; Munich Decl. Ex. 8, at 1 (appraiser email); Grogan Decl., at 1-2 (Doc. #41).  Plaintiff states he was aware that defendant failed to provide the mechanics with complete logbooks and that defendant did not produce the engine logbooks, "but given the otherwise excellent condition of the Helicopter, and the representations and warranties provided, I was not concerned."  Munich Decl., at 3.

For a sales contract, plaintiff downloaded a generic form entitled "Aircraft Purchase/Sales Agreement" from the Aircraft Owners and Pilots Association website.  Munich Decl., at 2.  The form contained blanks and alternative clauses in italics.  Munich Decl. Ex. 1, at 1-3.  Plaintiff filled in some of the blanks, signed the contract, and then faxed it to McCarty.  Munich Decl., at 2; David McCarty Decl., at 3; McCarty Decl. Ex. 1, at 5-7 (Doc. #32-1) (partially signed contract).  After reviewing the contract, McCarty signed it and sent it back to plaintiff.  David McCarty Decl., at 3. Plaintiff and defendant have submitted different, competing versions of the final signed contract.  *See* Munich Decl. Ex. 1, at 1-3 (signed contract); Brasel Decl., at 4-6 (Doc. #47) (signed contract); Suppl. David McCarty Decl., at 3-5 (Doc. #49) (signed contract).  Plaintiff's version contains additional handwritten notations not included in defendant's version.  Both parties assert that their submission is a "true" copy of the final contract.  Munich Decl., at 2; Suppl. David McCarty Decl., at 2; Def.'s Suppl. Reply, at 9-10 (Doc. #46).

Although questions remain as to handwritten notations in the final contract, the parties do not dispute the printed text of the contract.  The signed agreement contains two sections relating to the

---

[3]  There is an issue of fact in the record as to this point.  Defendant submits into evidence a declaration from David McCarty's daughter, Jolee McCarty, who was present during both inspections.  She states that she provided the mechanics with all the records and they did not tell her the records were unsatisfactory or incomplete.  Jolee McCarty Decl., 2-3 (Doc. #33); *see* David McCarty Decl., at 2-3.

airworthiness and maintenance.  Section No. 6 states, in pertinent part, "The Aircraft will be delivered to Buyer in its present condition, normal wear and tear excepted, with a valid FAA Certificate of Airworthiness."  Munich Decl. Ex. 1, at 2; Suppl. David McCarty Decl., at 4.  Section No. 7 of the form agreement provides two alternative clauses in italics that read:

> **7.  Warranties.** *Alternative clauses for this section:*
>
> *[Except as provided in this agreement, this Aircraft is sold 'as is.'  There are no warranties, either express or implied with respect to merchantability or fitness applicable to the Aircraft or any equipment applicable thereto including warranties as to the accuracy of the Aircraft's logbooks, made by Seller.  Buyer agrees that no warranty has been expressed or implied by Seller and that Buyer has inspected the Aircraft and understands that it is being purchased 'as is.'  Buyer hereby expressly waives any claim for incidental or consequential damages, including damages resulting in personal injury against Seller].*
>
> *[Seller warrants that (a) the Aircraft is in airworthy condition; (b) the Aircraft has a current annual inspection; (c) the Aircraft has a currently effective Standard Category airworthiness certificate issued by the Federal Aviation Administration; (d) all of the Aircraft's logbooks are accurate and current; (e) all applicable Airworthiness Directives have been complied with; (f)_____].*

Munich Decl. Ex. 1, at 2; Suppl. David McCarty Decl., at 4.

In accordance with the contract, plaintiff paid $375,000 for the helicopter and took possession of the helicopter and its records on or about October 30, 2012.  Munich Decl., at 2.  A few days before he picked up the helicopter, plaintiff, an FAA-certified mechanic, performed his own brief inspection of the helicopter.  David McCarty Decl., at 4; Ben McCarty Decl., at 2.  After purchase, plaintiff flew the helicopter and was satisfied with its performance on those test flights.  Munich Decl., at 3.  However, plaintiff states that when he reviewed the full logbooks after purchase, he found that the helicopter engine had been

removed in 2005 but could not find any record from the date of its reinstallation. Munich Decl., at 3. Further inspection of the logbooks revealed other gaps, raising concerns that various engine components could be past their life limits and may not have been replaced as required. Munich Decl., at 3-4.

In December, plaintiff contacted McCarty, who agreed to provide him with replacement parts from another engine and asked plaintiff to ship the turbine section of the engine to a Louisiana company, T&M Aviation, who would perform the work. Munich Decl., at 4; Munich Decl. Ex. 9, at 2-3 (Doc. #39-9)(emails); Def.'s Reply, at 9 (Doc. #42). Complying with McCarty's request, plaintiff shipped the engine section to T&M Aviation on January 17, 2013, and notified McCarty by email when it arrived. Munich Decl. Ex. 9, at 1 (emails); Munich Decl. Ex. 5, at 3 (UPS receipt) (Doc. #39-5). It is unclear how or when discussions ceased between plaintiff and McCarty, but in March, plaintiff had the engine section shipped from T&M Aviation to Sunrise Helicopter, Inc. in Texas. Larsen Decl. Ex. 1, at 36 (Doc. #31-1) (email); Peacocke Decl., at 1-2 (Doc. #40). When the engine section was disassembled and examined, plaintiff alleges that his representatives found it was in poor condition. Munich Decl., at 4. Also, even though CBH's records attested to full compliance with all ADs, the disassembled engine was missing the parts and modifications that AD 2005-10-13 required in order to prevent engine malfunctions during flight. Munich Decl., at 4; Peacocke Decl., at 2; *see* Smith Decl. Ex. 2, at 1 (Doc. #38-2). Plaintiff continued to email McCarty seeking resolution and advised McCarty that he would contact the FAA with his concerns if defendant would not resolve them. Larsen Decl. Ex. 1, at 38, 40-41.

On May 31, 2013, plaintiff filed the present complaint in federal court. Also in May 2013, plaintiff reported defendant to the Portland FAA, alleging defendant operated the helicopter with certain engine parts past their legal life limit. Larsen Decl. Ex. 1, at 57 (Doc. #31-1); Larsen Decl. Ex. 2, at 6 (Doc. #31-2); Def.'s Mot. Stay, at 2 (Doc. #12). While this case was pending, the FAA corresponded with McCarty seeking records and information. Smith Decl. Ex. 1, at 1-3 (Doc. #38-1) (CBH letter to FAA); Larsen Decl. Ex. 2, at 6. On July 24, 2013, the FAA sent plaintiff a letter stating its findings that defendant did not operate the helicopter with engine turbine wheels past their life limits. Larsen Decl. Ex. 2, at 6. However, the FAA lacked sufficient information to determine the status of the other engine parts: the compressor impeller and the bleed valve. Larsen Decl. Ex. 2, at 6. The FAA stated that it found incomplete maintenance records and, as a result, it was opening a formal investigation. Larsen Decl. Ex. 2, at 6. The FAA later informed McCarty of the results of its investigation in a letter dated February 26, 2014. Smith Decl. Ex. 2. The FAA concluded that defendant had failed to comply with AD 2005-10-13, had flown the plane when it was out of compliance, and, in doing so, had violated multiple FAR requirements. Smith Decl. Ex. 2, at 1-2. The letter stated, "As a result of the above, [CBH] operated [the helicopter] when the aircraft was not in an airworthy condition." Smith Decl. Ex. 2, at 1. The FAA referred the case to the U.S. Attorney's Office in October 2015. Suppl. Larsen Decl., at 85 (Doc. #50) (USAO letter); Pl.'s Status Report Ex. 1, at 1 (Doc. #51-1) (USAO letter). In letters dated June 27, 2016, an Assistant U.S. Attorney ("AUSA") informed the parties that

he was declining the FAA's request to file suit against defendant. *Id*. He stated, "My declination is obviously not an authoritative comment on the merits." *Id.*

In the present case, the Court granted defendant's request to stay litigation pending resolution of the FAA investigation and related proceedings. However, after more than a year without resolution, the parties agreed to resume the case. Joint Status Report (Doc. #27); *see* Doc. #19, 28. Plaintiff seeks damages, alleging breach of contract, unjust enrichment, fraud, and intentional interference with contractual relations. Compl., at 2-5 (Doc. #1). On February 1, 2016, defendant filed a motion for summary judgment on all claims. Plaintiff filed a response opposing the motion, and defendant filed a reply. On May 17, 2016, the Court heard oral arguments. After the U.S. Attorney's Office informed the parties it was declining the FAA's request that it sue defendant, both parties filed supplemental materials.

## LEGAL STANDARD

A party moving for summary judgment must show there is "no genuine dispute as to any material fact" and that the party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Disputed facts do not preclude summary judgment unless they are material facts, facts that could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, in

reviewing the motion for summary judgment, the Court construes all facts in the light most favorable to the non-moving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). After doing so, if a "fair-minded jury still could not return a verdict for the plaintiff on the evidence presented," the Court must grant summary judgment. *Anderson*, 477 U.S. at 252. Even in cases in which the parties agree on the material facts, "summary judgment should not be granted where contradictory inferences may reasonably be drawn from undisputed evidentiary facts" and could lead to a reasonable jury finding for the nonmoving party. *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

Jurisdiction of this action is founded upon diversity of citizenship. Therefore, the Court applies the substantive law of Oregon, where applicable, and the federal rules of civil procedure. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001). Before addressing the substance of plaintiff's claims, the Court considers defendant's procedural arguments for summary judgment. Defendant argues (1) that the Court should grant summary judgment as a sanction because "plaintiff has conceded his failure to preserve crucial evidence;" and (2) that "[b]ecause plaintiff did not allege [defendant's] failure to comply with an Airworthiness Directive in his Complaint, he cannot rely on that assertion to defeat summary judgment." Def.'s Reply, at 3, 9; *see* Def.'s Mot. Summ. J., at 15.

First, defendant urges the Court to dismiss the case on summary judgment as a

sanction for plaintiff's alleged spoilation of evidence.    District courts have inherent

discretionary power to impose appropriate sanctions, including dismissal, when a party has

destroyed or otherwise tampered with evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958

(9th Cir. 2006); *Lane v. Ingersoll-Rand Co.*, 2014 WL 4639854, at *8 (D. Or. Sept. 16,

2014); *Woodard v. Ford Motor Co.*, 2013 WL 3024828, at *2-*3 (D. Or. June 13, 2013).

However, a "finding of willfulness, fault, or bad faith is required for dismissal to be proper."[4]

*Leon*, 464 F.3d at 958;  *Lane*, 2014 WL 4639854, at *9; *see Grove City Veterinary Serv.,*

*LLC v. Charter Practices Int'l, LLC*, 2015 WL 4937393, at *3 (D. Or. Aug. 18, 2015).

Here, defendant fails to establish that plaintiff tampered with or destroyed evidence, much

less that plaintiff did so willfully or in bad faith.  Nor has defendant established plaintiff was

even at fault.  Defendant is correct that the engine parts at issue in this case are no longer in

plaintiff's possession, but it was defendant that initially instructed plaintiff to relinquish

---

[4]  Defendant argues that a "district court may grant summary judgment for a defendant on the grounds that a party has failed to preserve evidence necessary for the other side's case, even in the absence of bad faith."  Def.'s Mot. Summ. J., at 15.  However, in support of this contention, plaintiff cites only cases in which the sanction was exclusion of the evidence, not dismissal of the entire case.  *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp*., 982 F.2d 363, 368-69 (9th Cir. 1992) (affirming district court's exclusion of expert testimony as sanction for a party's "willful" destruction of evidence); *see also Weidler v. Spring Swings Inc*., 55 F. App'x 419, 419 (9th Cir. 2003) (unpublished) (affirming district court's exclusion of key evidence due to willful spoilation, an exclusion which resulted in dismissal for lack of evidence at summary judgment in *Weidler v. Spring Swings Inc*., No. 3:99-cv-01199-HA (D. Or. April 27, 2001), ECF No. 65, at *8, *11. ).  Moreover, "[e]ven when a court imposes a lesser evidentiary sanction than outright dismissal, it must find that the party willfully destroyed the evidence."  *Pirv v. Glock, Inc.*, 2009 WL 54466, at *5 (D. Or. Jan. 8, 2009); *see Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)  Unlike in the cases defendant cites, defendant seeks dismissal as a sanction and fails to establish that plaintiff acted willfully.

possession of them.  Munich Decl. Ex. 9, at 2-3 (emails).  Defendant instructed plaintiff to

send the parts to T&M Aviation in Louisiana so defendant could make repairs.  Munich Decl.

Ex. 9, at 2-3 (emails); Munich Decl., at 4; Def.'s Reply, at 9.  Now, defendant argues that

because plaintiff no longer possesses the engine parts, plaintiff should be sanctioned.  Indeed,

after negotiations with defendant broke down, plaintiff sold the parts to Sunrise Helicopter

in Texas and had them shipped there from Louisiana. Munich Decl., at 4.  However, this

alone does not establish spoilation.  In fact, Sunrise Helicopter's president states in his

declaration that he has retained all relevant parts received from plaintiff and will make them

available for inspection and trial.  Peacocke Decl., at 1-2.  Defendant does not allege that it

sought parts as evidence and plaintiff withheld, destroyed, or otherwise spoiled them.  There

is no evidence that defendant made any effort to obtain or inspect the parts during discovery,

despite defendant's assertion that the parts are "crucial evidence" required "for CBH to

conduct an independent investigation and put on its defense."  Def.'s Mot. Summ. J., at 15;

Def.'s Reply, at 10.  Absent any evidence of willful spoilation, the Court declines to impose

any sanctions at this time.

Regarding the second procedural argument, defendant seeks to prevent the Court from

considering "all references to CBH's allegedly 'egregious failure' to comply with the

Airworthiness Directive, as well as all legal argument based thereon and issues of fact arising

therefrom."  Def.'s Reply, at 3.  Defendant argues that because plaintiff did not include in

the complaint specific factual allegations concerning non-compliance with AD 2005-10-13,

plaintiff is foreclosed from making the allegations at summary judgment. Def.'s Reply, at 3. Defendant misconstrues the role of the complaint in civil litigation. The purpose of the complaint is to "give the defendant fair notice of what the claim is and the grounds on which it rests," but it "need not contain detailed factual allegations." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendant's reliance on *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) and other similar cases is misplaced. In *Wasco*, the plaintiff alleged a claim of civil conspiracy for the first time at summary judgment in an effort to toll the expired statute of limitations. *Id.,* at 991-92. In the other cases cited by defendant, the courts rejected efforts by plaintiffs at summary judgment to either add new claims, as in *Bepple v. Shelton*, 2016 WL 633892, at *8 n.4 (D. Or. Feb. 17, 2016) and *Shilling v. Crawford*, 2007 WL 2790623, at *9 n.2 (D. Nev. Sept. 21, 2007) or to add a new theory of standing, as in *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). Here, the allegations of noncompliance with AD 2005-10-13 do not create a new claim, a basis for tolling a statute of limitations, or new theory of standing. Rather, they add factual detail to plaintiff's existing claims that defendant breached the contract and committed fraud by selling him a helicopter that was not airworthy. Accordingly, the Court rejects defendant's request that it disregard evidence and argument concerning alleged noncompliance with AD 2005-10-13.

**I. Plaintiff's Claims**

Before addressing the disputed claims, the Court notes that plaintiff has agreed to drop his claim for intentional interference with contractual relations. Pl.'s Resp. Mot. Summ. J., at 1 (Doc. #37). Accordingly the Court dismisses that claim. The Court examines each of the remaining claims in turn.

### A.    Breach of Contract Claim

In his breach of contract claim, plaintiff alleges that defendant sold him a helicopter that was not airworthy and, in doing so, breached two separate sections of the contract. Pl.'s Resp. Mot. Summ. J., at 4, 17; Compl., at 3. In order to obtain summary judgment on this claim, defendant must show that no "fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. Not only does defendant fail to meet that burden, defendant's motion does not apply the correct law governing the breach of contract claim. Defendant's argument for summary judgment relies entirely on an Oregon statute concerning a buyer's right to revoke acceptance of nonconforming goods after their delivery, O.R.S. § 72.6080. Def.'s Mot. Summ. J., at 11-12. The statute, entitled "Revocation of acceptance in whole or in part," applies when a buyer seeks to return nonconforming goods and avoid any further obligation to pay for them, thereby rescinding the purchase contract.[5] *Lytech Sols., Inc. v. Steller Inc.*, 2014 WL 7250695, at *2 (D. Or.

---

[5] The statute reads as follows:
 72.6080. UCC 2-608. Revocation of acceptance in whole or in part
(1) The buyer may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it:

Dec. 16, 2014); *DCCI, LLC v. Keith,* 2014 WL 1269696, at \*5-\*6 (D. Or. Mar. 26, 2014);

*see In re Empire Pac. Indus., Inc.*, 71 B.R. 500, 506 (Bankr. D. Or. 1987); *see also* O.R.S.

§ 72.7110. When a buyer affirms the contract, pays for and retains nonconforming goods,

and seeks damages for breach, Section 72.6080 and its requirements are irrelevant. Instead,

the applicable statute is O.R.S. § 72.7140, entitled "Buyer's damages for breach in regard to

accepted goods."[6] *Lytech Sols.*, 2014 WL 7250695, at \*2 (D. Or. Dec. 16, 2014); *see In re*

*Empire Pac.*, 71 B.R. 500 at 506. Here, plaintiff accepted the helicopter and paid for it.

Plaintiff does not seek to revoke his acceptance of the helicopter, to avoid paying for it, or

to rescind the contract. Rather, plaintiff affirmed the contract, notified defendant of the

helicopter's nonconformity, and now seeks damages for breach. Compl., at 3. Accordingly,

Section 72.6080 is inapplicable to this case and defendant's arguments based on the statute

---

        (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
        (b) Without discovery of such nonconformity if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if the buyer had rejected them.

    [6] Under Section 72.7140, a buyer of goods may recover damages if he has accepted goods from the seller and given sufficient notification to the seller of the goods' nonconformity with the contract.

do not aid defendant's motion for summary judgment.[7]

Rather, the salient question is whether defendant breached the terms of its contract with plaintiff.  In general, a "breach of contract is a failure, without legal excuse, to perform any promise that forms all or part of the contract."  *DCCI,* 2014 WL 1269696, at *5. Plaintiff alleges defendant breached two separate sections in the contract: Section No. 6 when defendant allegedly failed to deliver the helicopter "with a valid FAA Certificate of Airworthiness" and Section No. 7 when defendant delivered a helicopter not in airworthy condition or as otherwise warranted.  Pl.'s Resp. Mot. Summ. J., at 4, 8-10, 17.

### (1)  Alleged Breach of Section No. 6

Although the parties have submitted different versions of the final contract, both versions contain Section No. 6, which promises defendant will deliver the helicopter "with a valid FAA Certificate of Airworthiness." Munich Decl. Ex. 1, at 3 (signed contract); Brasel Decl., at 5 (signed contract).  Neither side disputes that they agreed to this term.  At issue is whether defendant breached by delivering the helicopter with an invalid certificate.  Plaintiff argues defendant breached, because the helicopter's airworthiness certificates ceased to be valid when the helicopter failed to comply with "a long list of FAA mandated conditions." Pl.'s Resp. Mot. Summ. J., at 4.  Defendant contends that the helicopter's airworthiness

---

[7]  Similarly, defendant's reliance on a single case, *DCCI, LLC v. Keith,* 2014 WL 1269696 (D. Or. Mar. 26, 2014), is misplaced.  The plaintiff in *DCCI* sought to revoke his acceptance of a defective classic car and rescind the contract for its purchase under Section 72.6080. *Id.*, at *5.

certificates were valid at the time of sale, because the FAA had not suspended, revoked or

terminated them.  Def.'s Suppl. Reply, at 8.

The FAR and case law do not support defendant's assumption that only FAA action

such as revocation or suspension may invalidate an airworthiness certificate.  Noncompliance

with certain FAR also renders an airworthiness certificate invalid.  *Old Republic Ins.,* 402

F.3d at 877; *see Lanners v. Whitney,* 428 P.2d 398, 399-403 (Or. 1967); *Ochs v. Avemco Ins.*

*Co.,* 636 P.2d 421, 422, 423 n.1 (Or. Ct. App. 1981).  Under 14 C.F.R. § 21.181, "[u]nless

sooner surrendered, suspended, revoked, or a termination date is otherwise established by the

FAA, airworthiness certificates are effective . . . as long as the maintenance, preventive

maintenance, and alterations are performed in accordance with Parts 43 and 91 of [the FAR]

and the aircraft are registered in the United States."  14 C.F.R. § 21.181 (a)(1).  Thus, the

helicopter's certificates of airworthiness would not have been effective at the time of sale if

defendant had failed to comply with regulations contained in parts 43 and 91 of the FAR.

Such noncompliance would violate the contractual requirement of a "valid FAA certificate

of airworthiness."[8]

---

[8]  Although defendant does not argue the point, the Court notes there is no ambiguity as to
the meaning of "valid" in this context.   The terms "valid" and "effective" are clearly synonymous
such that an ineffective certificate is the same as an invalid one.  Other courts have reached the
same conclusion and used the terms synonymously.  *See, e.g., Luig v. N. Bay Enterprises, Inc.*,
55 F. Supp. 3d 942, 953 (N.D. Tex. 2014), *rev'd and vacated in part on other grounds*, 2016
WL 1192529 (5th Cir. Mar. 28, 2016) ("aircraft must continually satisfy FAA airworthiness
requirements in order for airworthiness certificates to remain valid"); *Bill Hames Shows, Inc. v. J.*
*J. Taylor Syndicate No. 173*, 642 F.2d 179, 180 (5th Cir. 1981) ("The alteration, being major
under the FAR's definition, invalidated the craft's airworthiness certificate until such time as the

Not only does Section 21.181 make clear that certificate-holders must continually comply with regulations, defendant's airworthiness certificates also notified defendant of this obligation. Issued in 2001, the helicopter's standard and special airworthiness certificates advised defendant that their continued validity depended on compliance, under Section 21.181, with Parts 43 and 91 of the FAR. Defendant's standard airworthiness certificate states: "Unless sooner surrendered, suspended, revoked, or a termination date is otherwise established by the Administrator, this airworthiness certificate is effective as long as the maintenance, preventative maintenance, and alterations are performed in accordance with Parts 21, 43, and 91 of the Federal Aviation Regulations." Parsons Decl., at 6 (Doc. #48) (Standard Certificate). The back of the defendant's special airworthiness certificate reads: "Unless sooner surrendered, suspended, or revoked, this airworthiness certificate is in effect for the duration and under the conditions prescribed in FAR Part 21, Section 21.181." Parsons Decl., at 8 (Special Certificate).

Thus, defendant's compliance with Parts 43 and 91 of the FAR is material to whether or not defendant breached its contract with plaintiff. To prevail on summary judgment, defendant must demonstrate the absence of any genuine issue of fact regarding the validity of the airworthiness certificates at the time of sale. *See In re Oracle Corp. Sec. Litig.*, 627

---

craft was approved to return to service by the FAA"); *O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 283, 285 (Colo. 1985) (using the terms "effective" and "valid" synonymously). Thus, an ineffective airworthiness certificate would be invalid and would not satisfy the requirement of Section No. 6 of the sales contract.

F.3d 376, 387 (9th Cir. 2010); Fed. R. Civ. P. 56(a).  Defendant fails to do so, instead

arguing vigorously that the Court should credit its evidence over that of plaintiff.  Issues of

material fact preclude summary judgment.

     For example, Part 91 includes 14 C.F.R. § 91.417 and § 91.419 which require an

aircraft owner to maintain and transfer to a new owner  records containing the "total time in

service" and "current status of life-limited parts of . . . each engine."   14 C.F.R.  §§

91.417(a)(2), 91.419.   Plaintiff alleges defendant violated this regulation when it failed to

provide records of the status and wear of several life-limited engine parts, including the

compressor impeller and the bleed valve.  Pl.'s Resp. Mot. Summ. J., at 11.  Moreover, the

FAA stated in its  July 24, 2013 letter that the helicopter's records were incomplete and

insufficient as to the impeller and bleed valve.[9]  Larsen Decl. Ex. 2, at 6 (Doc. #31-2).

Defendant argues that plaintiff's allegations of deficiencies in the logbooks lack merit and that

the FAA never pursued the allegations.  Def.'s Suppl. Reply, at 5-6.  Whether defendant

invalidated the certificates of airworthiness by failing to comply with those regulations is one

of several disputes of material fact.

     A valid airworthiness certificate also requires a certificate-holder to engage a qualified

mechanic to complete annual inspections certifying airworthiness.  *See, e.g.,* 14 C.F.R. §§

_____

     [9]  The FAA letter states "without documentation . . . it cannot be determined if the
Impeller had exceeded its life limit . . . the investigation of the Bleed Valve was inconclusive
because of the lack of documentation" and that "this finding, along with findings that other
maintenance entries could not be obtained, has led the office to open a formal investigation."
Larsen Decl. Ex. 2, at 6 (Doc. #31-2).

91.409(a), 43.11.  The certificate-holder is required to maintain and transfer to a buyer records of those inspections as well as records showing the "current status of applicable airworthiness directives (AD) and safety directives including, for each, the method of compliance, the AD or safety directive number and revision date."   14 C.F.R. §§ 91.417(a)(2), 91.419.  The certificate-holder violates 14 C.F.R. § 43.12 if it makes or causes to be made a "fraudulent or intentionally false entry in any record or report" of compliance. Here, it is undisputed that defendant provided plaintiff records, signed by defendant's mechanic, attesting to defendant's compliance with all applicable ADs, including AD 2005-10-13.  Larsen Decl. Ex. 1, at 98 (Doc. #31-1); Munich Decl. Ex. 3, at 3 (Doc. #39-3).  The FAA's subsequent investigation concluded that defendant had actually failed to comply with AD 2005-10-13.  Smith Decl. Ex. 2 (Feb. 26, 2014 FAA letter).  Plaintiff alleges that defendant's mechanics certified in the aircraft records, at least once every year, that the helicopter and its engine were airworthy and complied with ADs, even though there is a dispute whether this is actually true.  Pl.'s Resp. Mot. Summ. J., at 12.  Plaintiff alleges those records were false and fraudulent.  Pl.'s Resp. Mot. Summ. J., at 13.  Defendant argues plaintiff's allegations are merit-less as evidenced by the AUSA's decision not to pursue further action against defendant.  Def.'s Suppl. Reply, at 6-7.

Defendant argues that "[p]laintiff's complaints that certain parts were overflown and that the Helicopter's written records were inaccurate" lack any merit, because "the FAA has outright rejected these claims as to both Mr. Parsons [defendant's mechanic] and CBH."

Def.'s Suppl. Reply, at 6. However, the evidence is not as clear-cut as defendant claims.

Rather, the FAA records cited by defendant indicate that investigators could not reach a

conclusion whether the impeller and bleed valve were overflown due to incomplete records,

a finding that would be reiterated in the FAA's July 24, 2013 letter. Suppl. Larsen Decl., at

95 (FAA records); Larsen Decl. Ex. 2, at 6 (letter). This is not the same as an "outright"

rejection. As for defendant's mechanic, the FAA investigated Parsons for "an alleged

violation that reportedly occurred on Monday, February 28, 2005 in the vicinity of ECHO,

OR," and did not find he committed an FAR violation. Parsons Decl., at 11 (FAA letter to

Parsons). It is unclear if the FAA investigated anything beyond the alleged violation on

February 28, 2005. If the investigation was limited to that date, the FAA did not "exonerate"

Parsons of all alleged violations, as defendant claims. Tr., at 44, 45-46 (Doc. #53). Nor do

the findings have any bearing on defendant CBH's conduct, because Parsons, by his own

account, was not working for defendant until Spring of 2006, more than a year after the 2005

violation allegedly took place. Parsons Decl., at 1; Suppl. Larsen Decl., at 96. The

significance of the FAA's determination regarding Parsons is unclear. Contrary to

defendant's assertions, the evidence in this case is not so one-sided as to permit summary

judgment in defendant's favor.

This case presents factual disputes reserved for trial, not summary judgment.

Defendant's compliance with Section 43.12 and related regulations is a genuine issue of

material fact, precluding summary judgment on the breach of contract claim.

### (2)  Alleged Breach of Section No. 7

The Court need not address plaintiff's allegations that defendant breached Section No. 7 of the contract, because factual disputes related to Section No. 6 already preclude summary judgment on the breach of contract claim.  However, the Court notes that genuine issues of material fact are also presented regarding Section 7 of the contract that would preclude summary judgment.

The parties submit as evidence different versions of the final contract, and each side states that its version is the true and correct one.  Munich Decl., at 2; Suppl. David McCarty Decl., at 2; Def.'s Suppl. Reply, at 9-10.  This factual dispute is material, because it bears on how the Court interprets Section No. 7.  The section contains two "alternative" warranty clauses.  The first clause disclaims all warranties except those provided elsewhere in the contract and states that the helicopter is sold "as is."  Munich Decl. Ex. 1, at 2 (signed contract); Brasel Decl., at 5 (signed contract).  By contrast, the second clause provides broad warranty protections, including guarantees of airworthiness, accurate logbooks, and compliance with all applicable ADs.  *Id.*  The first clause favors defendant and could relieve it of some, if not all, liability.  The second clause could bolster plaintiff's case.  Whether one, both, or neither warranty clause applies could affect the outcome of the case.

However, at this point, the Court declines interpret Section No. 7, given the factual discrepancy in the record.  Plaintiff's version of the signed contract includes a handwritten asterisk next to the second of the two warranty clauses providing for broad protections for

plaintiff.  Munich Decl. Ex. 1, at 2 (fully signed contract).  Defendant's version does not include any asterisk or other marking that could indicate that one or both parties selected a particular warranty clause.[10]  Brasel Decl., at 5 (signed contract).   If the final contract included an asterisk and it represented both parties' agreement to select the second clause, the asterisk could be determinative of Section No. 7's meaning.  Even if McCarty added the asterisk on his own without consulting plaintiff, the asterisk could still be evidence of his intent at the time he signed.  The provenance and meaning of the asterisk presents an ambiguity and an issue of material fact precluding summary judgment.

Nonetheless, defendant urges the Court to disregard the asterisk and accept its version as the true version of the contract.  Defendant argues that plaintiff did not rely on the asterisk in his arguments and that defendant's declarations from McCarty and plaintiff's escrow agent support defendant's version of the final contract.  Def.'s Suppl. Reply, at 10.  However, such a determination would be inappropriate at this stage.  At summary judgment, the Court "must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations."  *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117–18 (9th Cir. 2009); *see Anderson*, 477 U.S. at 255.   The Court denies defendant's motion for summary judgment on the breach of contract claim.

### B.  Unjust Enrichment Claim

---

[10]  There are other differences between the versions but they do not appear to be material.

Plaintiff's second claim is for unjust enrichment. Defendant argues the Court should dismiss the claim, because "a party to an express contract cannot recover under an unjust enrichment theory." Def.'s Mot. Summ. J., at 2. However, plaintiff states that he pleaded the unjust enrichment claim "in the alternative in the event the Contract is found to be invalid or incomplete. Until such time as the meaning of all terms, warranties and conditions contained in the Contract are adjudicated, it would be premature to dismiss" the claim. Pl.'s Resp. Mot. Summ. J., at 17. Indeed, a claim for unjust enrichment, also called quasi-contract, "is not a claim based upon an express contract." *Kashmir Corp. v. Patterson*, 616 P.2d 468, 469 (Or. 1980). Rather, it is a "remedial device which the law has formulated to permit recovery . . . from a party even though under the law of express contracts that party would not be obligated to pay." *Id.* Here, although neither party disputes that the contract is enforceable, the parties dispute the terms of the contract and their meaning. As the contract's parameters are yet to be determined, it remains possible that plaintiff could have a claim not covered by the contract's terms. The Court agrees with plaintiff that it would be premature to dismiss the unjust enrichment claim.

### C. Fraud Claim

Plaintiff alleges in his fraud claim that defendant provided false records and made false assertions of airworthiness that induced plaintiff to purchase the helicopter. Pl.'s Resp. Mot. Summ. J., at 13-14. Defendant argues the fraud claim should be dismissed, because plaintiff will not be able to prove essential elements of the claim. Def.'s Mot. Summ. J., at

8-11.  The elements of common-law fraud claim are:  (1) defendant made a material misrepresentation that was false; (2) defendant did so knowing the representation was false; (3) defendant intended plaintiff to rely on the misrepresentation; (4) plaintiff justifiably relied on the misrepresentation; and (5) plaintiff was damaged as a result of that reliance.  *Strawn v. Farmers Ins. Co. of Oregon*, 258 P.3d 1199, 1209, *adhered to on reconsideration*, 256 P.3d 100 (Or. 2011).  Defendant argues plaintiff cannot prove the first element, that defendant made a false material representation, or the fourth element, that plaintiff justifiably relied on the representation.  Def.'s Mot. Summ. J., at 8.  However, the evidence does not support defendant's arguments.

(1) False Material Representation

Defendant argues that plaintiff cannot prove the first element, because the facts show defendant "did not warrant the Helicopter to be airworthy."  Def.'s Mot. Summ. J., at 8. However, as the Court has already explained, there remain issues of material fact as to whether Section No. 7 of the contract expressly warranted the helicopter as airworthy. Moreover, it is undisputed that the contract included a promise that defendant would deliver the helicopter with a valid airworthiness certificate that would include compliance with a long list of airworthiness requirements.  In addition, undisputed facts indicate defendant made a variety of non-contractual representations to the plaintiff bearing on the helicopter's

airworthiness.[11]  For example, defendant provided to plaintiff's two mechanics a signed

record attesting to defendant's compliance with all applicable ADs. Larsen Decl. Ex. 1, at

98; Munich Decl. Ex. 3, at 3.  Defendant provided plaintiff those same records when plaintiff

examined and took possession of the helicopter.  Munich Decl., at 4.  The helicopter's

logbooks also contained certifications that the helicopter was airworthy and had passed a

recent annual inspection.  Munich Decl., at 3-4.  McCarty also represented to plaintiff that

the helicopter met Part 135 requirements and was authorized to fly air charter and commuter

flights.  Munich Decl., at 2.  These were all representations of fact bearing on the

airworthiness of the helicopter, which was unquestionably material to the transaction.[12]  *See*

*Lanners,* 428 P.2d at 402.

   As for the falsity of those "representations of material fact," there is evidence from

which a jury could reasonably conclude the representations were false. As noted earlier, the

FAA investigator concluded that defendant failed to timely comply with AD 2005-10-13.

Smith Decl. Ex. 2, at 1-2 (Doc. #38-2).  If a jury credited the FAA findings, defendant's

---

   [11] Fraud is an intentional tort and not a contract claim, and thus, it does not require the
material misrepresentation be part of a contract or take the form of a contractual warranty.  *See*
*Knepper v. Brown*, 195 P.3d 383, 387 (Or. 2008).  Actionable fraud may stem from non-
contractual verbal misrepresentations as well as from misleading conduct, concealment of
material information, and other means of communication which relay false material facts.  *See,*
*e.g., Ogan v. Ellison*, 682 P.2d 760, 765 (Or. 1984)(concealment); *Smallwood v. Fisk*, 934 P.2d
557, 559-660 (Or. Ct. App. 1997) (conduct).

   [12] All of the representations relate to whether plaintiff could legally fly the helicopter and
use it in his passenger air charter business.

signed records attesting to compliance and airworthiness would be false. By presenting these records to plaintiff and his mechanics, there is a question of fact whether defendant made false material representations. As for the representations in the contract itself, there is sufficient evidence from which a reasonable jury could conclude that the helicopter's airworthiness certificate was not valid at the time of sale as promised in the Section 6 of the contract. Therefore, genuine issues of material fact preclude summary judgment.

### (2) Justifiable Reliance

Defendant also argues that plaintiff cannot possibly establish the fourth element of fraud, justifiable reliance. Def.'s Mot. Summ. J., at 8. In order for a plaintiff to justifiably rely on a misrepresentation, the plaintiff must have had a right to rely. *U.S. National Bank v. Fought*, 630 P.2d 337, 342, 348-49 (Or. 1981); *Morasch v. Hood*, 222 P.3d 1125, 1130 (Or. Ct. App. 2009). In other words, plaintiff's reliance must be reasonable. *Id.* Whether plaintiff had a right to rely on a given representation is a question of law. *Fought,* 630 P.2d at 349; *Womer v. Melody Woods Homes Corp*., 997 P.2d 873, 875 (Or. Ct. App. 2000). Defendant asserts that savvy buyers should not "blindly rely on a seller's statements, but are 'required to make use of their means of knowledge.'" Def.'s Mot. Summ. J., at 9 (quoting *Miller v. Protrka*, 238 P.2d 753, 759 (Or. 1951)). While defendant's statement is sound advice, it is not necessarily the law unless the buyer and seller are on equal footing in terms of expertise and access to information. *Miller*, 238 P.2d at 758-59; *Soursby v. Hawkins*, 763 P.2d 725, 729 (Or. 1988). The "maxim of caveat emptor applies . . . [when] the prospective

buyers have or can obtain equal means of information and are equally qualified to judge certain factors claimed to contribute to the value of the property offered for sale." *Miller*, 238 P.2d at 758-59; *see Soursby*, 763 P.2d 725 at 729. Moreover, when a court determines the buyer was on equal footing and thus, had a duty to investigate the seller's representations, the duty is "limited to exercising reasonable diligence or conducting a reasonable inquiry." *Soursby,* 763 P.2d at 729. "Thus, purchasers may rely on representations if discovering the truth would be unreasonably difficult." *Id.*, at 730; *Gamble v. Beahm,* 257 P.2d 882, 886 (Or. 1953).

Here, plaintiff was equally qualified as defendant to judge the helicopter's value, but he arguably did not have "equal means of information." Defendant owned, maintained, operated, and had custody of the helicopter and its extensive records. Moreover, there is a question of fact as to whether defendant withheld records from plaintiff's representatives during pre-purchase inspections. Even if the Court finds that plaintiff and buyer had equal access to information and applies *caveat emptor*, plaintiff needed only to exercise "reasonable diligence." He was entitled to rely on the thoroughness and truthfulness of the helicopter's official logbooks and signed records, documents which the law required defendant to make, maintain, and provide plaintiff.[13] Plaintiff was not required to scour the helicopter's records

---

[13] *See, e.g.,* 14 C.F.R. §§ 91.417(a)(2)(v) & (b)(2) (requiring aircraft owners to keep records of 'the current status of applicable Airworthiness Directives' and transfer the records upon sale of the aircraft); 14 C.F.R. § 43.11 (requiring mechanics and pilots to sign and certify a vessel's airworthiness for return to service after maintenance and inspection); 14 C.F.R. § 43.12 (prohibiting fraudulent or intentionally false records or reports).

for omissions and inconsistencies that might reveal a misrepresentation in violation of the FAR. Furthermore, plaintiff testifies that "[n]o amount of inspection, or flight testing, would have revealed the problems found inside the engine," at least nothing short of disassembling the engine. Munich Decl., at 4. He testifies that it is not customary for sellers to allow potential buyers to disassemble a turbine engine in a pre-purchase inspection as it is risky and prohibitively time-consuming and expensive. Munich Decl., at 4. At oral argument, defendant argued that pre-purchase disassembly would not have been unreasonable. Tr., at 39-40. However, there is no evidence in the record to support defendant's contention.

Not only did plaintiff have a right to rely on representations in the helicopter's logbooks, he had no duty to second-guess warranties provided in the contract. It is well-established that a buyer may limit his risk in a transaction by negotiating for express warranties and contractual provisions promising to deliver adequate goods. A "party to whom an express warranty has been made is entitled to rely on that warranty without further investigation." *Hayden Corp. v. Glacier Park Co.*, 896 P.2d 604, 607 (Or. Ct. App. 1995); *see F. C. Austin Co. v. J. H. Tillman Co.*, 209 P. 131, 140 (Or. 1922). "An express warranty . . . by the great weight of authority gives the buyer a remedy notwithstanding the defects were visible or open to discovery at the time they were received." *F. C. Austin*, 209 P. 131, 140 (Or. 1922). Here, if defendant is found to have made express warranties in the contract itself, plaintiff is not required to investigate and second-guess those warranties in order for a court to enforce them. Thus, as a matter of law, the Court finds that plaintiff had a right to

rely on express warranties and on legally mandated maintenance and safety records.  Insofar as there are issues of fact regarding the existence or meaning of warranties and records, those issues must be reserved for trial.

The Court need not delve into the other elements of fraud as defendant's motion for summary judgment does not address them.  However, the Court notes that there is evidence from which a jury could reasonably conclude that those elements are satisfied.  Defendant bears the burden of demonstrating there no issues of material fact and fails to meet this burden.  The Court denies summary judgment on plaintiff's fraud claim.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment (Doc. #30).  The Court DENIES summary judgment as to plaintiff's breach of contract, unjust enrichment, and fraud claims.  The Court GRANTS summary judgment as to plaintiff's intentional interference with contractual relations claim.  Plaintiff's intentional interference with contractual relations claim is hereby DISMISSED.  IT IS SO ORDERED.

DATED this 26th day of August, 2016.


   /s/ Patricia Sullivan

Patricia Sullivan
United States Magistrate Judge